UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

                    Plaintiff,                    Case No. 1:20-cv-889

v.                                                Honorable Janet T. Neff

HEIDI E. WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

          This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Washington, John or Jane Doe Black, John or Jane Doe Grey, Warfield, Jennings,

McCauley, and Thompson.  Additionally, the Court will dismiss for failure to state a claim all of

Plaintiff's claims against Defendant Minnick except the following:  (1) Plaintiff's equal protection

claim arising out of the MSOP homework mandatory group meeting on July 30, 2020; and

(2) Plaintiff's First Amendment retaliation claim arising out of Defendant Minnick's June 2020 threat to delay Plaintiff's completion of MSOP if he files grievances.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains occurred while Plaintiff was housed at that facility.

Plaintiff sues MDOC Director Heidi E. Washington, MDOC C.F.A. Coordinator John or Jane Doe Black, MDOC Bureau of Health Care Services Coordinator John or Jane Doe Grey, Michigan Parole Board Members Jerome L. Warfield, Sr. and Melissa K. Jennings, IBC Warden Unknown McCauley, IBC Social Worker Unknown Minnick, and IBC Assistant Residential Unit Supervisor Unknown Thompson.  The Defendants, with the exception of Minnick and Thompson are sued in their official and personal capacities.  Minnick and Thompson are sued only in their personal capacities.

Plaintiff's complaint concerns his prospects of parole and the programs he has been asked to complete in anticipation of parole, including the Michigan Sex Offender Program (MSOP).    Information  regarding  Plaintiff's  sentences  provides  useful  background  in understanding his claims.  Plaintiff pleaded guilty in the Ionia County Circuit Court to malicious destruction of personal property valued at $1,000 to $20,000, in violation of Mich. Comp. Laws § 750.377a.  On September 2, 2008, the court sentenced Plaintiff to a sentence of 1 to 5 years, to be served consecutively to sentences Plaintiff was serving either in prison or on parole when he committed the malicious-destruction crime.  Those sentences include a sentence of 2 to 20 years imposed by the Oakland County Circuit Court on November 8, 2000, for armed robbery following Plaintiff's guilty plea to that offense, and a sentence of 1 year, 6 months to 22 years, 6 months

2

imposed by the Oakland County Circuit Court on September 5, 2000, for second-degree home invasion following Plaintiff's guilty plea to that offense.

The Michigan Department of Corrections reports that Plaintiff's earliest release date was September 1, 2009, and his maximum discharge date is June 16, 2025.  *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=305405 (visited October 8, 2020).  Those dates suggest that the Oakland County sentences are concurrent to each other and that the Ionia County sentence is consecutive to the Oakland County sentences.  The Ionia County Circuit Court case details, available at https://micourt.courts.michigan.gov/casesearch/ Terms?ReturnUrl=%2Fcasesearch%2FCourt%2FC08~1%2FSearch%3FSearchText%3Djason% 2Bsanders (visited October 8, 2020), expressly state that the Ionia sentence is consecutive to Plaintiff's other sentences.

Pursuant to Michigan Department of Corrections policy directive, "if an offender is serving consecutive sentences, none of the sentences that are part of the consecutive string shall be terminated until all sentences in that string have been served."  Michigan Department of Corrections Policy Directive 03.01.135 (eff. Apr. 15, 2019).  Working backward from Plaintiff's maximum discharge date, it is apparent that the only sentence remaining to be served is Plaintiff's sentence for malicious destruction of property.  Although Plaintiff has not been discharged from his other sentences, and they have not been terminated, it appears they have expired; he has already served the maximum sentence.

None of Plaintiff's crimes are sex offenses; however, he acknowledges that he has collected 300 tickets during his incarceration and "many of them [are] sexual misconducts (verbal) and (exposure) on female staff from 2008 to 2017."  (Compl., ECF No. 1, PageID.6)  As a result of the misconducts, Plaintiff reports that he received over 6 years-worth of loss-of-privileges,

detention, and segregation time, as well as continuances from the parole board.  (*Id*.)  On a more positive note, since 2017, when Plaintiff completed the Violence Prevention Program (VPP), he claims he has received no misconducts, sexual or otherwise.  (*Id*.)

During the spring of 2019, Defendants Warfield and Jennings evaluated Plaintiff for parole.  Defendant Warfield was concerned about the number of tickets Plaintiff had earned. Warfield suggested that he would grant parole if Plaintiff would agree to participate in a sex-offender treatment program following his parole.  Plaintiff readily agreed.  Warfield requested a psychological evaluation.  Plaintiff was continued for another 12 months, despite Warfield's promises.

On December 12, 2019, after Plaintiff's security level had been decreased, he was directed to complete MSOP at IBC in order to gain parole.  He was moved to the cellblock that housed the sex-offenders to facilitate his completion of that requirement.

On January 31, 2020, Plaintiff completed the first stage of the MSOP.  He was told that he had to complete the MSOP group therapy stage as well.  Defendant Minnick placed Plaintiff on "high" status, which required 12 to 18 months in the program, even though the program screen said "medium" status, which required 6 to 12 months.  Because of the duration of the "high" status program and the timing of parole decisions, Plaintiff posits that the MSOP added 29 months to his incarceration.

During April 2020, Defendants Jennings and Warfield reviewed Plaintiff again. Plaintiff reports they told him he did not deserve parole due to his misconducts.  Plaintiff also reports that Defendants Thompson, McCauley, and Minnick said the parole board agreed that Plaintiff would remain in prison until he completed MSOP.

Plaintiff grieved the parole board, the CFA, the mental health care staff, and the Bureau of Healthcare Services.  He claims that because of that grievance, he was kicked out of his original MSOP group.  Plaintiff acknowledges, however, that he was kicked out "under the guise that he was squeezing a homosexual pedophile in group therapy."  (Compl., ECF No. 1, PageID.12.)  Plaintiff claims "defendants" told him that he would not be going home when he completed group therapy, but that he would be ordered to start all over again because of his grievances and that if he kept writing grievances, his group therapy would be extended to his maximum release date.

On July 30, 2020, Plaintiff was kept late at work and, as a result, was late for MSOP homework group.  Defendant Minnick told the group that they would be required to write an essay on why members should not be late for group.[1]  Plaintiff is black.  Plaintiff claims a white prisoner, Williams, was also late, but Minnick did not take the same actions or impose the same requirements because of prisoner Williams' tardiness.

Minnick sent Plaintiff to his cell to get his MSOP call-out.  While Plaintiff was gone, Minnick prodded the remaining group members to contemplate the impact Plaintiff's tardiness had on them.  Minnick told them she would turn her head and let them deal with Plaintiff as a group.  When Plaintiff returned, he was verbally attacked.  Later, a couple of the group members assaulted Plaintiff.

Plaintiff reports that at the end of August 2020, Defendant Minnick cancelled the MSOP indefinitely, presumably because of the COVID-19 virus.

Plaintiff contends that it is arbitrary to penalize him for misconducts by requiring him to participate in MSOP when he was already punished for those misconducts.  Plaintiff

---

[1] Plaintiff alleges that it was Defendants Minnick **and Berkshire** that told the group about the essay, but he has not named any Defendant Berkshire in his complaint.

contends it is also a violation of MDOC policy, the Double Jeopardy Clause, due process, equal protection, and the prohibition against cruel and unusual punishment. Plaintiff claims that MSOP facilitators give positive MSOP termination reports to white prisoners twenty times more than those facilitators do for black and Latino prisoners.

Plaintiff seeks a judgment declaring that Defendants have violated his constitutional rights, injunctive relief against Defendant McCauley that requires him to produce criteria for participation in MSOP; precludes him from placing prisoners in MSOP who are not sex offenders or otherwise do not meet the criteria; and compels him to replace the facilitators and officers in the sex-offender unit on first shift and to change the operation of the MSOP program. Plaintiff also seeks tens of thousands of dollars in compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.     Failure to follow MDOC policy, procedures, or state law

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Nor does a failure to comply with an administrative rule or policy itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

**IV.** **Due process right to parole**

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan

Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for or grant him parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

## V.    Due process right to not being classified a "sex offender"

Plaintiff also contends it is wrong that he is required to participate in sex-offender treatment when he is not in prison for a sex offense. Plaintiff's contention is based on a faulty premise. He is not required to participate in sex-offender treatment. He is doing so voluntarily in the hope he will improve his chances of parole. Where parole is not a protected liberty interest, however, a condition or voluntary prerequisite of parole cannot enjoy due process protection either, unless that condition or prerequisite is independently worthy of due process protection. *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793-94 (W.D. Mich. 2012) ("Thus, the conditions of Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated Plaintiff's right to due process only if they;  (1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,' *Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)); or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id*.").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was not deprived of due process where he was compelled to participate in sex-offender treatment as a condition of parole. The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering from a mental illness or defect that could not be treated at the prison facility, so they transferred him to a mental health hospital for treatment under a state statute allowing the transfer of such prisoners. *Vitek*, 445 U.S. at 484. The plaintiff claimed that the prison officials violated his right to due process because their determination of illness was not accompanied by adequate notice or a hearing. *Id.* at 485. The Court agreed, finding that state law and practice gave the plaintiff an objective expectation that he would not be transferred unless a proper determination was made regarding his mental state. *Id.* at 489-90. Even apart from state law and practice, however, the plaintiff was entitled to due process because the consequences that he suffered were "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id.* at 493. The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id.* Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual. *Id.* at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

*Catanzaro*, 848 F. Supp. 2d at 794. This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id.* at 795. This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those who were not. *Id.* at 796. The Sixth Circuit Court of Appeals recently acknowledged the existence of that line as well, but that court drew the line at a slightly different place. In *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the court reversed the district court's dismissal of a claim like Plaintiff's where the plaintiff had "neither been convicted of a sex crime ***nor accused of any sexual wrongdoing while incarcerated***." *Harper*, 2020 WL 4877518, at *1.

Plaintiff is not in the same position as the plaintiff in *Harper*; his position is more like the plaintiff in *Catanzaro*. Although Plaintiff might not be in prison because of a sex offense,

he has committed many, perhaps hundreds, of sexual misconducts in prison.  He alleges so in his complaint.  Those offenses are Class I misconducts.  MDOC Policy Directive 03.03.105, Prisoner Discipline, Attachment A (eff. July 1, 2018).  Class I misconduct proceedings in the MDOC enjoy the procedural protections that the Supreme Court has determined are necessary when misconduct proceedings require constitutional due process.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-572 (1974).  Plaintiff does not claim otherwise.  Thus, to the extent Plaintiff is entitled to due process protection before being classified a "sex offender," he alleges nothing to support the inference that he did not receive the process he was due.

## VI.    Substantive due process

Plaintiff states that the "arbitrary actions by the defendants should shock the mind of any human being."  (Compl., ECF No. 1, PageID.14.)  "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002).  "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'"  *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).  The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power."  *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D.

11

Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

This Court rejected a similar argument in *Catanzaro*:

> Plaintiff's required participation in the RSOP as a condition for his parole does not shock the conscience; it serves the state's legitimate interest in protecting the members of the community from future sex offenses. *See McKune*, 536 U.S. at 33, ("Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism").

*Catanzaro*, 848 F. Supp. 2d at 799.   Requiring Plaintiff to complete the MSOP under the circumstances present here, likewise does not shock the conscience.   Accordingly, Plaintiff's substantive due process claim will be dismissed.

**VII.   Excessive punishment and unlawful confinement**

Plaintiff complains that his sentence, as "extended" by his participation in the MSOP, is excessive.   Presumably, in making that argument Plaintiff intends to invoke the protection of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Although the Eighth Amendment prohibits barbarous punishments, it does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Plaintiff was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Plaintiff's continued incarceration, therefore, until he serves his maximum sentence, does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Plaintiff also contends he is confined unlawfully. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484

(1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-

14

48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of his continued incarceration. Therefore, his action is barred under *Heck* until his maximum sentence has been invalidated.

## VIII.  Double jeopardy

Plaintiff complains that requiring him to participate in MSOP because of his sexual assault and misconduct tickets constitutes a multiple punishment for those offense because he has already endured the punishments imposed as part of the prison disciplinary process. The Sixth Circuit rejected a similar claim in *Harper*:

> The Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, provides that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against "multiple punishments for the same offense." *Jones v. Thomas*, 491 U.S. 376, 381 (1989). But the Double Jeopardy Clause is inapplicable here because the clause "was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008).

*Harper*, 2020 WL 4877518, at *3; *see also Daugherty v. Washington*, No. 2:20-cv-6, 2020 WL 967268 (W.D. Mich. Feb. 28, 2020) ("[T]he Double Jeopardy Clause does not apply to all punishments. "'[J]eopardy describes the risk that is traditionally associated with a criminal prosecution.'" *Breed*, 421 U.S. at 528 (citing *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970)). For that reason, the Supreme Court has determined that the Double Jeopardy Clause "'protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings.'" *United States v. Beaty*, 147 F.3d 522, 524 (1998) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)). Plaintiff's double jeopardy claim, therefore, will be dismissed.

## IX.   Equal Protection

Plaintiff identifies two distinct equal protection claims.  First, Plaintiff alleges that he was late to MSOP homework mandatory group on July 30, 2020.  Prisoner Williams was also late.  Minnick set up Plaintiff, a black man, for verbal and, ultimately, physical assaults by the group members for his tardiness; Minnick did not set up, or take any action against, Williams, a white man.  Second, Plaintiff claims that white prisoners who have been in MSOP at IBC and committed heinous crimes against adults and children receive positive termination reports by IBC MSOP Facilitators, including Minnick, at a rate of 20 to 1 compared to black and Latino prisoners.

### A.   Positive MSOP termination reports

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

The premise of this equal protection claim is that IBC MSOP facilitators give positive termination reports to white MSOP participants and negative termination reports to black MSOP participants. To establish "Article III" standing, a litigant must show:

(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision.

16

*Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002). Plaintiff, however, has not received a positive or a negative termination report because he has not completed the program. He has not been injured and therefore lacks standing to pursue the claim.

Even if Plaintiff had standing, the claim would be properly dismissed because it is hopelessly conclusory. Plaintiff alleges:

> The racial disparity between white prisoners, who have been in MSOP at IBC and committed heinous crimes against adults and children are paroled and receive positive termination reports by IBC MSOP facilitators Minnick, Berkshire and Greiner reports 20 to 1 compared to black and latino prisoners.

(Compl., ECF No. 1, PageID.14.) That is the entirety of Plaintiff's allegations regarding this claim. The claim is remarkably similar in form to a claim Plaintiff raised in *Sanders v. McCauley et al.*, No. 1:20-cv-308 (W.D. Mich.). In that case Plaintiff alleged that Lieutenant Harrison in deciding misconduct charges found all black prisoners guilty and all white prisoners not guilty. The undersigned noted that such conclusory allegations were not sufficient in significant part because they fail to "specify any facts to support a finding that the prisoners who received misconducts on that date were similarly situated in all relevant respects." *Sanders v. McCauley*, No. 1:20-cv-308, 2020 WL 2028302, at *8 (W.D. Mich., Apr. 28, 2020).[2] Plaintiff's allegations here suffer the same deficiency.

## B.   Discriminatory "punishment" for tardiness

Plaintiff's allegations with regard to Minnick's conduct on January 30, 2020, is much more specific. He alleges that he was treated differently than Prisoner Williams, who was

---

[2] To be a similarly-situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998)).

similarly situated, because of his race.  Plaintiff's equal protection allegations regarding that incident suffice to state a claim.

**X.      First Amendment retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges:

> On 6-__-20 when Minnick, ~~Berkshire, and Greiner~~ became aware that Plaintiff grieved the Parole Board, C.F.A., Mental Health Care staff, and Bureau of Health Services, Plaintiff was kicked out of his original group (under the guise that he was squeezing a homosexual pedophile in group therapy) to another group that was behind on their schedule, these defendants told the Plaintiff when he completed group therapy, he will not be going home like the Parole Board deferral and MCL required, but after they talked to the Parole Board (Warfield and Jennings) he will be ordered to start the group all over again in response to his grievances against all the defendants, and that if Plaintiff keeps writing grievances they will extend group therapy until his maximum date for release, 2025.

(Compl., ECF No. 1, PageID.12.)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Preventing Plaintiff from satisfying a requirement for his release if he files grievances would likely deter a person of ordinary firmness from engaging

18

in that protected conduct.  Finally, accepting Plaintiff's allegations as true, Minnick specifically

tied her threat to Plaintiff's continued participation in the protected conduct.  Plaintiff's allegations

suffice to state a First Amendment retaliation claim against Defendant Minnick.

## XI.    Conspiracy

Plaintiff alleges that five of the Defendants, Thompson, McCauley, Minnick,

Berkshire, and Greiner, conspired to violate Plaintiff's First, Fifth, Eighth, and Fourteenth

Amendment rights.[3]  (Compl., ECF No. 1, PageID.21.)  Plaintiff's allegations of conspiracy lack

the factual detail necessary to state a claim.  A civil conspiracy under § 1983 is "an agreement

between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693

F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).

The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the

general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action

committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at

695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must

plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material

facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must

be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely

a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330

F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative.   His

allegations, even viewed in the light most favorable to Plaintiff, describe actions that occurred over

the course of more than a year involving numerous individuals.  Plaintiff has provided no

---

[3] Plaintiff did not name Berkshire and Greiner as Defendants.  *See § XIII, infra.*

allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on an attenuated inference from the mere fact that these persons all opined that he should complete MSOP before being released. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. It appears likely that the Defendants common opinions that Plaintiff's sexual misconduct history warranted participation in MSOP prior to release are not the product of agreement, but simply parallel observations based on Plaintiff's record of hundreds of misconducts in prison. Such parallel behavior does not suffice to state a plausible claim of conspiracy.

Moreover, Plaintiff's proposed conspiracy is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC or Corizon) are acting outside the scope of their employment, they are deemed to be one collective entity and not

capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, these five (or three) Defendants are members of the same collective entity who work at the same divisional location. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment.

For both reasons, Plaintiff has failed to state a claim for conspiracy to violate his constitutional rights.

## XII.    Heidi Washington

Plaintiff names Defendant Washington in his complaint; however, he does not specifically allege that she participated in the conduct of which he complains. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim

under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

It might be the case that Plaintiff has named Defendant Washington because of her supervisory role over the other Defendants.  (Compl., ECF No. 1, PageID.14) ("The Plaintiff has been sentenced by the defendants (. . . approved by Director Washington) [to] 2 years, 5 months to 2025 for past accumulated misconducts.").  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76

22

(6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).   The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).   Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).   "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Accordingly, Plaintiff's claims against Defendant Washington will be dismissed.

## XIII.   Berkshire and Greiner

In the body of Plaintiff's complaint he mentions Berkshire and Greiner as persons who have some involvement in the MSOP, perhaps as facilitators.   (Compl., ECF No. 1, PageID.10, 14, 18, 21.)  Plaintiff apparently intended to include them as Defendants at some point; however, he crossed them off when he named the Defendants.   (Compl., ECF No. 1, PageID.3.) The fact that Plaintiff mentions them in the complaint does not suffice to state claims against them where he has not named them as Defendants.

## XIV.   Defendants Doe Black and Doe Grey

Plaintiff's allegations against Defendant Doe Black, the C.F.A. Coordinator, and Doe Grey, the Bureau of Health Services Coordinator, are also scant.  Plaintiff seems to allege that these Defendants participated somehow in Plaintiff's referral to MSOP.   (Compl., ECF No. 1, PageID.8-9, ¶ 28.)  Plaintiff suggests that the conduct of Defendants Doe Black and Doe Grey violated MDOC policy and procedure.  As explained above, violation of state law or MDOC policy directives does not suffice to state a claim.   Accordingly, Plaintiff has not stated a claim against Defendants Doe Black or Doe Grey.

## XV.   Immunity

Defendants Warfield and Jennings are members of the Michigan Parole Board. Members of a parole board have absolute immunity from damages liability for actions taken in the performance of their duties regarding the decision to grant or deny parole because that task is functionally comparable to that of a judge.  *Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780, at *1 (6th Cir. Nov. 4, 1999); *Tillman v. Price*, No. 96-2032, 1997 WL 225993, at *1 (6th Cir. May 5, 1997); *Ward v. Moss*, No. 94-1417, 1994 WL 664948, at *1 (6th Cir. Nov. 23, 1994); *accord Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996); *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996); *Little v. Bd. of Pardons, and Parole Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992).  The actions of which Plaintiff complains were taken by Defendant Parole Board members in their quasi-judicial function of deciding whether to grant or deny Plaintiff's parole; therefore, they are entitled to absolute immunity against Plaintiff's claims for monetary damages.

## XVI.   Warden McCauley

Plaintiff's specific claims against Warden McCauley appear at pages 20 and 21 of his complaint.  Plaintiff alleges that Warden McCauley failed to intervene when the others violated Plaintiff's constitutional rights.[4]  As explained above, however, Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899.  The only active conduct Plaintiff alleges with regard to Defendant McCauley is a conversation with Warfield and Jennings suggesting that

---

[4] Additionally, Plaintiff alleges that McCauley conspired with the other Defendants to violate his constitutional rights. For the reasons stated above, however, those allegations fail to state a claim.

Plaintiff should not be paroled in light of the hundreds of misconducts he earned while incarcerated. Even if such a conversation actually occurred, it did not violate Plaintiff's constitutional rights.

Accordingly, Plaintiff's claims against Defendant McCauley will be dismissed.

## XVII. Defendant Thompson

Plaintiff's allegations against Defendant Thompson include the following:

Defendant Thompson had a conversation with Parole Board Defendants concerning Plaintiff's tickets (misconduct reports) and placement in MSOP, then spoke with Minnick (who also contacted these Parole Board Defendants), both alleging that plaintiff did not deserve parole due to his misconducts from 2008 to 2016.

Thompson said the Parole Board has agreed with us [Thompson, McCauley, and Minnick] that they are going to continue you in prison until you complete MSOP due to your sexual misconducts. And that this program was ordered for you by Warfield and Jennings.

(Compl., ECF No. 1, PageID.11-12.) The only conduct Plaintiff alleges with regard to Defendant Thompson is a conversation with Warfield and Jennings suggesting that Plaintiff should not be paroled in light of the hundreds of misconducts he earned while incarcerated. Even if such a conversation actually occurred, it did not violate Plaintiff's constitutional rights. Accordingly, Plaintiff's claim against Defendant Thompson will be dismissed.

## XVIII. Appointment of Counsel

Plaintiff has requested a court-appointed attorney. (ECF No. 2.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will therefore be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, John or Jane Doe Black, John or Jane Doe Grey, Warfield, Jennings, McCauley, and Thompson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, the Court will dismiss for failure to state a claim all of Plaintiff's claims against Defendant Minnick except the following: (1) Plaintiff's equal protection claim arising out of the MSOP homework mandatory group meeting on July 30, 2020; and (2) Plaintiff's First Amendment retaliation claim arising out of Defendant Minnick's June 2020 threat to delay Plaintiff's completion of MSOP if he files grievances. Those two claims against Defendant Minnick remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 16, 2020                              /s/ Janet T. Neff
                                                       Janet T. Neff
                                                       United States District Judge